## NEWCOMB v. TAX ASSESSOR, et al.
### No. 66-714-E.
Circuit Court, Duval County.

February 7, 1968.

Harry C. Kincaid, Jacksonville, for plaintiff.

Stallings & Marr, J. Henry Blount, Walter C. Shea, Rogers, Towers, Bailey, Jones & Gay, all of Jacksonville, for defendants.

WILLIAM L. DURDEN, Circuit Judge.

This case is before the court upon application of the parties for the entry of a final judgment. The court has considered the factual and legal issues raised by the pleadings, the oral testimony, the documentary evidence and arguments by counsel.

### A. JURISDICTION, PARTIES AND VENUE

There is no controversy as to any of these issues.

### B. BASIC ISSUES CREATED BY THE PLEADINGS

#### 1. Unlawful or excessive assessment

The taxpayer alleged that the assessments for the year 1965 were grossly and unlawfully over-valued and that they were, and are unlawful, excessive, illegal and unequal and constituted a taking of plaintiff's property without due process of law.

The defendants denied these allegations and therefore this point constitutes the first issue to be determined.

#### 2. Preferential agricultural assessment

The plaintiff has further alleged that the subject property is being used for bona fide agricultural purposes within the purview of §193.11(3), Florida Statutes 1967, and that she is entitled to the preferential assessment provided for by that law.

The defendants have denied the material allegations of the complaint on this point which therefore constitutes the second issue to be determined.

#### 3. Exhaustion of administrative remedies

The defendant tax assessor has asserted as an affirmative defense that the plaintiff failed to return the subject property to the tax assessor requesting agricultural treatment and also failed to protest the non-agricultural assessment of the property to the board of county commissioners of Duval County sitting as a board of tax equalization and that she has therefore failed to exhaust her administrative remedies and therefore cannot maintain this suit in court.

The plaintiff has taken issue with the defendant tax assessor and this constitutes point number three to be determined.

### C. SUBJECT PROPERTY

The property involved in this litigation is contained in three separate parcels which are described as follows:

*TRACT A:* SW ¼ of NW ¼, N ½ of NW ¼ (Except part in Braddock Road) NE ¼ of SW ¼, Lot 1, N ½ Lots 2, 3 and 4 in Section 30, Township 1 North Range 26 East; containing 345 Acres. *TRACT B:* NE ¼ of SE ¼, S ½ of SW ¼ (Except North 30 feet in County Road and part in Lem Turner Road) in Section 33, Township 1 North, Range 26 East; containing 116 Acres. *TRACT C:* SW ¼ of NE ¼, Lot 1, S ½ of Lot 2, in Section 29, Township 1 North Range 26 East; containing 152¾ Acres.

## D. EVIDENCE

The parties have stipulated as to the large majority of facts involved in this litigation and the stipulated facts will be referred to under the following sections dealing with the issue to which such facts relate.

### 1. *Unlawful or excessive assessment*

For the year 1965 the property was assessed in the following amounts —

| *Tract No.* | *RE No.* | *Assessment* |
| --- | --- | --- |
| A | 18944 000 | $103,500 |
| B | 18974 000 | 41,000 |
| C | 18942 000 | 15,300 |

The property was assessed on an acreage basis as unimproved land with a highest and best use in the immediate future for investment, residential or commercial purposes. It was not assessed on the basis of having a present and highest and best use in the immediate future for agricultural purposes.

The plaintiff did not submit any testimony or other evidence as to the fair market value of the property.

The tax assessor submitted as evidence a formal appraisal by Roy F. Smith, Jr., who is an expert in the field of real estate appraising. Mr. Smith concluded that the fair market value of the property as of January 1, 1965, was in the following amounts:

| *Tract No.* | *1965 RE No.* | *Fair Market Value* |
| --- | --- | --- |
| A | 18944 000 | $103,500 |
| B | 18974 000 | 46,400 |
| C | 18942 000 | 30,550 |

### 2. *Preferential agricultural assessment*

The parties stipulated with regard to this issue that the facts and conclusions contained in the following paragraphs are true.

The subject property and a large majority of the property in the general area is covered with a relatively heavy growth of pre-marketable and marketable pine timber. Much of the land in the area is devoted either to forestry operations or dairy farms.

For the taxable years following the year in issue the plaintiff has returned each parcel of the subject property claiming that it was being used for bona fide agricultural purposes under §193.11(3), Florida Statutes. This property was personally inspected by members of the tax assessor's office who concluded that a stand of timber containing in excess of 300 stems per acre was present on each parcel of the subject property. It was further observed that there was evidence of fire lanes having been cut; of selective cutting of the timber and of a recent sale and cutting of timber. There was also present evidence of the growth of young pine seedlings. On the basis of these observations, the property was granted agricultural treatment for the year 1966.

The assessments were as follows —

| Tract No. | 1966 RE No. | 1966 Assessment |
|-----------|-------------|-----------------|
| A | 19437 000 | $17,300 |
| B | 19467 000 | 5,700 |
| C | 19435 000 | 6,100 |

The plaintiff has further been accorded the preferential agricultural assessment for the year 1967.

## 3. Failure to exhaust administrative remedies

On this issue the parties agreed that the following facts were true and should be considered. These facts are exactly as stated in the stipulation.

(a) The plaintiff did not request special "green belt" treatment under §193.11(3) from the defendant tax assessor or protest the challenged assessment either as to the proper legal approach to assessing said parcel or the proper legal amount which would represent the just value of said parcel to the board of tax equalization of said county.

(b) Defendant tax assessor notified the plaintiff taxpayer as required by law of the proposed assessment, of the method of assessment of her property and of her legal rights by, in conjunction with the board of county commissioners of said county, publishing a legal notice pursuant to §193.25 on June 22, 1965, that on July 6, 1965, Ralph N. Walter, tax assessor of Duval County, would meet with said county commissioners sitting as

a board of equalization, for the purpose of hearing complaints and receiving testimony as to the assessed valuation of any real property and would so meet from day to day so long as necessary. The ad valorem tax roll was made available to the public for thirty days prior to hearings by the board of equalization of said county; and prior to June 1, 1965, a notice of value and notice of legal right to protest said value to the said board of tax equalization was addressed to plaintiff for mailing on June 1, 1965.

(c) The board of tax equalization did meet on July 6, 1965, with defendant tax assessor for the purpose of hearing complaints, and the period of such hearings was extended to July 15, 1965, and then to August 10, 1965.

(d) The plaintiff's permanent mailing address is 67 Rennie Street, San Jose, California. The manager of the subject property resides in Georgia. Persons who have grazing leases on the subject property reside in Duval County, Florida. The plaintiff alleged in her complaint that she did not receive a preliminary notice of the assessed value which the tax assessor intended to place on the subject property and that the first notice she had of the 1965 revaluation program in said county was after she had received her final tax bill. Defendant does not contest the fact that plaintiff never received the preliminary notice, and defendant admits that plaintiff was never personally contacted by any officer or employee of Duval County.

(e) Insofar as plaintiff's failure to exhaust administrative remedies is concerned, the parties hereto also adopt as true and accurate the following quoted portions from the final decree entered by the undersigned judge on December 5, 1966, in the case of Margaret C. Sandusky v. Clyde H. Simpson, no. 66-707-E, fourth judicial circuit in and for Duval County —

> [T]hirty days prior to the commencement of hearings by the board of tax equalization, the preliminary ad valorem tax roll was made available to the public. And, on June 1, 1965, a notice of value and notice of legal right to protest that value was addressed and mailed to every ad valorem real property taxpayer. The board of county commissioners published legal notice on June 22, 1965, that on July 6, 1965, they would meet with the tax assessor for the purpose of hearing complaints and receiving testimony as to the legality of assessed valuations. The board did meet on this date and continued meeting almost to the end of September 1965. The period for filing written complaints was originally extended to June 15, 1965, and then to August 10, 1965 . . . [T]he board had an announced policy of hearing any taxpayer who desired to protest the assessed valuation placed on real property.

As to protests to the board in general, the extensive efforts of the various public officials involved resulted in approximately 23,000 taxpayers filing protests to the board of tax equalization and, as to property owners who had not received "green belt" treatment for the year 1965 and were of the opinion that such treatment should have been accorded them, the efforts of the public officials of this county and particularly of the tax assessor, the county agricultural agent and the county farm forester resulting in 3,000 petitions being filed to the board of tax equalization alleging an invalid assessment on the grounds that the property should be accorded special "green belt" treatment.

\* \* \* \*

The board also heard oral arguments from numerous taxpayers who had filed "green belt" petitions and allowed evidence to be presented as to whether or not such treatment should be accorded the taxpayer.

\* \* \* \*

[C]onfusion undoubtedly existed during the year 1965 in Duval County due to the fact that a massive revaluation program was being concluded, but . . . each and every public official involved in the tax procedures of Duval County during the year 1965 made efforts which went far beyond the requirements of law to advise every taxpayer of each and every right and remedy to contest ad valorem real property tax assessments . . . [T]he efforts of the public officials of this county reached 23,000 taxpayers who filed petitions protesting their real property tax assessments . . .

## E. DISCUSSION AND DETERMINATION

### 1. Unlawful or excessive assessment

It is the duty of a taxpayer who contests the propriety of his assessment and contends that his property has been over-valued for taxation purposes to submit sound and convincing proof. Here the taxpayer submitted no evidence whatsoever on that issue. Quite to the contrary, the defendant tax assessor submitted the evidence of a highly competent appraiser that not only did the property have a fair market value in the amount of the assessment but that the property was in fact worth considerably more than the amount of the assessment. Obviously the taxpayer is entitled to no consideration, much less relief, on this point.

### 2. Preferential agricultural assessment

This suit involves the assessment for the year 1965. For the years 1966 and 1967 it has been admitted that the use of the property constituted a bona fide agricultural operation and was entitled to the preferential agricultural assessment. It is also apparent that the same situation and use existed for the taxable

year in question· Therefore, unless the taxpayer is not entitled to relief on the grounds of failure to exhaust her administrative remedies it is apparent that the property meets the statutory test, or at least the tax assessor so admits. This brings us to a consideration of the critical issue in controversy.

## 3. Exhaustion of administrative remedies

### (a) Discussion

The core of the question before this court is — Has the taxpayer alleged and proven sufficient ultimate facts to invoke equity jurisdiction and obtain relief despite her own admitted failure to file a return or to protest the non-preferential assessment?

This court agrees that where a taxpayer seeks favorable treatment or benefits under a law which in effect grants special relief that such a taxpayer has a duty to take some affirmative action to give the taxing officials appropriate notice of such claim. A taxpayer cannot get homestead or any other exemption without timely filing an application for such treatment.

It is clear from the evidence that the general practice of the tax assessor in this county and every other county in the state of Florida is to personally inspect real property regardless of whether or not a return is filed in arriving at assessed valuations. The reason for this is obvious, that is, real property is always present within the county and insofar as a fair market value assessment is concerned, personal inspection of real property and of whatever improvements may be located thereon is necessary to arrive at a fair assessed valuation. However, it does not follow that the tax assessor is obligated to discover all bona fide agricultural operations by personal inspections of property·

The admitted evidence clearly demonstrated that the public officials of Duval County made every effort to advise the taxpayers of the county of their rights and that they went far beyond the procedural requirements of the law.

### (b) Controlling law

The rule of law is established and the exceptions indicated in the Stiles litigation which originated in Leon County. The opinion of the Supreme Court of Florida was rendered on February 2, 1966, Stiles v. Brown, 182 So.2d 612.

Justice Ervin, speaking for the court, wrote —

> "A property owner who failed to inform the county tax assessor that his land was being used for bona fide agricultural purposes and failed to appear before a board of equalization to assert such claim could not challenge in any equity suit the validity of the assessment of the land which was assessed as non-agricultural land in an amount which the landowner did not timely claim exceeded the fair market value of land but which he now claims in his suit is entitled to preferential treatment accorded agricultural lands by Sec. 193.11(3), F. S."

The opinion of the First District Court of Appeal was rendered on August 5, 1965, Stiles v. Brown, 177 So.2d 672. Judge Rawls stated the question to be —

> "Is an assessment of agricultural lands void ab initio for the failure of the *tax assessor* to ascertain such classification when making the assessment?"

The response of the court was in the negative. Judge Rawls stated the law to be —

> "We hold that it is the duty of a landowner desiring the beneficial treatment of Section 193.11(3) to make known to the taxing authorities his claim of utilizing the subject property for agricultural purposes, either by making a timely return of his property or by exhausting his administrative remedies and that in the absence of a landowner so doing, an assessment which does not give effect to said statute, is valid."

As will be noted, these statements of the law are rather absolute in their terms. In fact, however, the Supreme Court simply restated the law as announced by the District Court and the District Court did the same to the opinion of Circuit Court Judge Hugh M. Taylor.

Judge Rawls agreed and quoted with approval the language of Judge Taylor that in certain situations equity jurisdiction could be invoked even though the taxpayer failed to file a return and failed to protest before the board of equalization. The language of Judge Taylor was as follows —

> "It is sufficient to say that in some factual situations a court of equity has been held to have power to grant relief even though no return was filed and no complaint made to the Board of Equalizers.

"No circumstances are shown which appeal to a court of equity as sufficient to justify refusal to follow the letter of this statute."

Under ordinary circumstances this rule should be strictly applied. For the one taxable year 1965 and in the county of Duval perhaps this rule should be relaxed and perhaps a court of equity should give the classic relief which has so long distinguished those courts from the cold and impersonal courts of law. The constitution and laws of Florida are replete with provisions that such taxpayers suits are exclusively in the jurisdiction of a court of equity.

There has been widespread confusion and disorder regarding the law and procedure relating to assessments and taxes throughout the state. This prevailed to such an extent that Justice Thomas was prompted to start off his opinion in the case of Walter v. Shuler, 176 So. 2d 81, with the classic statement that, "From all accounts the tax roll of Duval County for 1964 is a mess".

The courts of Florida at all levels are now engaged in a series of cases to bring order out of such chaos. Heretofore, returns by taxpayers on real property have been the exception rather than the rule. The role of the board of equalization in "green belt cases" has been confusing to the commissioners and contradictory to the taxpayer. Efforts were made by the assessor to get applications and forms mailed to and returned by applicants for agricultural benefits. This effort, however, while wholly gratuitous and not required by law, was not a blanket action and did not include the plaintiff in its sweep. Prior to 1965 assessments on such lands were so low and outdated that not many bothered to seek agricultural status. 31 Fla. Jur., *Taxation,* §253.

In conclusion, this court finds that confusion undoubtedly reigned supreme during the taxable year 1965 in Duval County due to the massive re-evaluation program being conducted.

For the one tax year involved and because of the equitable considerations alleged and proven the plaintiff should be permitted to maintain this action and to have it determined on its merits.

The parties have agreed that for the year 1965 the subject property was located in the tax district and was subject to the millage rate indicated below by tract and 1965 RE No.; if the

subject property is granted agricultural treatment for the year 1965 with the 1966 assessments being adopted as legal by the court, the total corrected tax on each parcel is also indicated below —

| Tract No. | 1965 RE No. | Tax District | Millage Rate | 1965 Corrected Tax |
|-----------|-------------|--------------|--------------|--------------------|
| A | 18944 000 | 1 | 30.1497 | $521.59 |
| B | 18974 000 | 1 | 30.1497 | 171.85 |
| C | 18942 000 | 1 | 30.1497 | 183.91 |

Assuming the legal amount of tax for the year 1965 to be in the amount of the above-specified corrected tax, there will be due and owing from the plaintiff to the tax collector of Duval County, with appropriate credit being given for discount due, the amount of $95.13 plus interest at the rate of 6% from April 1, 1966.

It is therefore adjudged that —

(1) The 1965 final ad valorem real property assessment on the subject property as set by the assessor is not in excess of the fair market value thereof and that the taxpayer is not entitled to any relief on the issue of over-assessment by value.

(2) The property involved constitutes a bona fide agricultural operation and the taxpayer is entitled to the preferential assessment provided therefor for the year 1965.

(3) In accordance with the stipulation the total tax on each parcel is as follows —

| Tract No. | 1965 RE No. | Tax District | Millage Rate | 1965 Corrected Tax |
|-----------|-------------|--------------|--------------|--------------------|
| A | 18944 000 | 1 | 30.1497 | $521.59 |
| B | 18974 000 | 1 | 30.1497 | 171.85 |
| C | 18942 000 | 1 | 30.1497 | 183.91 |

(4) There is due and owing from the plaintiff to the defendant tax collector the amount of taxes on this valuation less the amount paid with appropriate credit being given for discount due in the amount of $95.13, plus interest at the rate of 6% from April 1, 1966.

(5) The execution procedures provided for by the statutes of this state are stayed for a period of thirty days during which the taxpayer may make payments required by this judgment.

(6) As the taxpayer has received some of the relief which she requested, it is the determination of the court that each of the parties to this litigation should sustain their own costs and therefore costs are not assessed against any party.